Now we have our case this morning. It is 24-1028, United States v. Moon Seals, counsel for appellant. If you would proceed, we'll hear you next. Good afternoon, your honors. May it please the court, Jake Rochebeau for the appellant Malachi Moon Seals. Mormons' two-step process is incorrect. The relevant statutes, guidelines, and legislative history make clear that Chapter 7 alone provides the applicable range of imprisonment when imposing sentence following revocation and probation. First, the probation revocation statute, Section 3565A, states that if the defendant violates a condition of probation, the district court may revoke the sentence of probation and re-sentence the defendant under Subchapter A. Subchapter A includes Section 3553A.4, which requires courts to consider the sentencing range established by the Sentencing Commission for A, the offense of conviction, or B, in the case of a violation of probation or supervised release, the Chapter 7 range. And Chapter 7 says, in the case of a revocation of probation, the applicable range of imprisonment is that set forth in Section 1B, set in Section 7B.1.4. Read together, these authorities clearly state that when imposing sentencing following revocation of probation, Chapter 7 supplies the applicable sentencing range the district court must consider. The legislative history confirms this. Indeed, the language of Section 3565A and 3553A.4.B was proposed by the Sentencing Commission for the specific purpose of implementing Chapter 7. As the congressional record explains, the purpose was, quote, to remove any doubt that these pronouncements, not those applicable to initial sentencing decisions, are the appropriate reference for revocation purposes. That is, when revoking a probationary sentence, the guideline range operative at the time the defendant was sentenced to probation is no longer applicable. Accordingly, this Court should overrule more one. Consistent with every other circuit, this Court should hold that upon revocation of probation, the Chapter 7 provides the applicable sentencing range. That is, the district court must start by correctly calculating the Chapter 7 range, and may vary therefrom based on the other 3563A factors. I welcome this Court's questions. Well, should we then affirm the district court sentence here, if we adopt your position? No, Your Honor. The district court did not appreciate that Chapter 7 was the applicable guideline range. It was given multiple competing arguments as to what the applicable guideline range was. Mr. Moonseel said it was Chapter 7. Moore's two-step process was presented. Probation said that the Chapter 5 guideline was required by an old 10-Circuit case from the early 90s, and the government was arguing for the Chapter 5 sentencing guideline range. Could the district court vary upwards under a pure Chapter 7 framework? Absolutely. In other words, reach the 34 months here just through a different procedure? It certainly could, but that's not what it did not apply to the correct standard. It didn't start with Chapter 7. It did not treat Chapter 7 as the anchor. It did not vary from Chapter 7 up to 36 months. It mistakenly believed that it could pick either Chapter 7 or Chapter 5 as the anchor, and it chose Chapter 5 as the anchor and imposed what it believed to be a within-guideline sentence. What the district court did was, its error was thinking that it had to choose between different anchors, and it chose Chapter 5 as the applicable guideline range, and then it started with Chapter 5 and imposed a within-guideline sentence. That's very different from understanding that Chapter 7 is the anchor and then explaining a variance therefrom. Certainly, we can assume that on remand, the district court would give an upward variance. There's really no question about that. As insufficient? Right, and I assume it could even give the exact same explanation for why it thinks that 3 to 9 months is too low, but there's a difference between explaining why it's going to increase the sentence from 3 to 9 to find the appropriate sentence, versus saying I'm not going to start with Chapter 7, I'm going to start with Chapter 5, and then impose a within-guideline range sentence. And that's a pretty broad search. There's a lot of problems in the search. I would assume today that when the court is fully within the sentence, and you can choose between 6, 7, and 3 months, what would you say is the correct answer? Yes, exactly, Your Honor. Again, there is a difference between starting with Chapter 7 guideline range and explaining why it is varying upward from there. Like, analogizing to treating this the same as any guideline range error, there's a presumption that when the district court applies the wrong guideline range, that that error is harmful, that the procedure matters. And when we're talking about a guideline range, the Supreme Court is very clear that it's not only the initial benchmark, but the district court must remain cognizant of it throughout the entire sentencing procedure. And that did not happen here. So the district court didn't explain the variance, didn't explain its sentence in terms of the variance from Chapter 7. It simply rejected Chapter 7 as the anchor, picked Chapter 5 as the anchor. And that's error. Chapter 5 guideline range is relevant only insofar as it's relevant to the 3553A factors, and the district court here didn't treat it that way. The argument that I'm now making is the one that we argued to the district court, and that's that the correct procedure. We have Mr. Moonfields from the district court through, we preserved the issue on appeal, and now on rehearing en banc, have always maintained that Chapter 7 is the only applicable guideline range. And that's the process the district court didn't apply below. And that's the correct procedure here. No, Your Honor. So if more two is correct, or more one and more two, if under a two-step process, then no, we did not argue below that the district court was fixed at zero. But the district court didn't apply more one. So really this is, if this court upholds the two-step process, the district court didn't do that either. And my argument that the district court would be locked into zero is really more important for a third-prong analysis, meaning if this court remanded to the district court because it failed to apply the two-step process, then there's a reasonable probability that at step one it wouldn't be a guideline sentence. It would again vary downwards to something around, to the equivalent of zero, or probation or supervised release at step one. Counsel, if probation is revoked and the defendant is sentenced on Chapter 7's policy statements, what is the sentence at that point for the underlying offense? So when probation is revoked, 3565A says that there has to be, that the sentence of probation is revoked and there has to be a resentencing. So as a formal technical matter, I guess the sentence is, on the underlying conviction, is the new sentence. The newly imposed Chapter 7-based sentence. So whereas the district court originally imposed a sentence of probation upon revocation, the sentence is now imprisonment plus supervised release. So that's your interpretation of the word resentenced in the statute? Yes, Your Honor. That there has to be a resentencing because the probation. There is no sentence. When probation is revoked, there is no sentence for the underlying offense at that point, correct? Right. And then, so there has to be a resentencing, and then at that resentencing it says to apply subchapter A, and then subchapter A includes 3563A4, and A4B specifically says that when the sentence, when you're going to the 3563A factors, upon a revocation of supervised, probation of supervised release, Chapter 7 is the guideline range that the district court has to consider. So would the sentence then be a sentence for the underlying offense and for the violation? It, so I guess it depends if you're asking as a formal matter what the judgment is and what it's for, or do you mean like what is the driving force, what is the, what is driving that? Well, I guess I'm thinking about how the statute talks about both probation and supervised release, and in a supervised release context, the sentences are conserved, and so when there's a violation, you have a sentence for violation of supervised release. But here, probation is the sentence, and if it's revoked, again, I'm taking from what you're saying that whatever the ultimate sentence is, it applies across the board, that is for the underlying offense and also what led to the revocation of probation. Yes, there's not, yeah, that becomes the total sentence on the underlying conviction and the revocation of probation. But as a formal matter, though, you referenced what the judgment is going to look like. Is the judgment going to reference the violation of probation? I mean, it is not going to in any sense harken back to what the original offense was, right? So as a practical matter, the form, what happens when probation is revoked and a new sentence is imposed, the actual form of judgment just says judgment for revocation, and it's the exact same judgment as supervised release. Well, that's what I'm getting at. It's going to look the same. So the notion that somehow or other this is conflating the two, a sentence for the original offense and a sentence for the probation violation is not entirely true as a matter of form because that person is being sentenced for violating probation, which was the sentence at the original sentencing, right? Right. So I think under the statute, it is saying that there has to be a single resentencing based on subchapter A, and then at that sentencing, the district court has to consider the chapter 7 guideline range is what drives that new sentence. There is only one new sentence, and I think as a technical matter, it is the replacement for the original sentence on the underlying offense. So in that sense, it is the sentence for the underlying offense of conviction. It replaces that original sentence. But it's done within the context of the policy statements, which address a breach of trust relative to the probation violation, right? The range of imprisonment in 71.4 is for the breach of trust, but that's not the only component of the sentence. Well, it can be, and so it's not the same as sentencing for the original offense. What do you mean? Because it's one thing to say you can look at chapter 5 as a benchmark. Are we giving him a serious enough offense in light of 3553A? But you don't have to do that, right, under your view. Under your view, you can look at chapter 7, say 3 to 9 months is fine by me, and that's what I'm going to give him, right? Right. Okay, then under that view, I think the objection that I'm trying to struggle with, which is the one I hear opposing your view, is that wipes out, that effaces the original sentence. It's as if it didn't exist. It's as if no one is getting any sort of punitive action as it relates to the original sentence, because you are sentencing him for a probation violation, period. Breach of trust, right? I disagree, Your Honor, because the chapter 7 recommended sentence, again, it's just advisory. This is the policy that the Sentencing Commission has decided is the appropriate sentence upon revocation. The range of imprisonment isn't the only aspect of that sentence. It also cross-references and says to impose supervised release under chapter 5. So whereas the original sentence was just supervision, following revocation of that supervision, the new sentence is imprisonment plus continued supervision. So this is consistent with the modern philosophy of what probation is. It is imprisonment plus supervision, but it's still imprisonment relative to a breach of trust, which is not the factor that would have been considered at the time that he was At that time, we were talking about 3553A relative to the crime, not relative to I put you on probation and you violated my trust by what you did. And I'm going to, whether I could reference chapter 5, but I don't have to, right? Right. But the point is the continued supervision that chapter 7 also recommends is consistent with the original punishment. The original, at the original sentencing, the district court determined that, and so what I'm getting at is the modern philosophy of probation is that it's not just this, well, let's see how you do, like I would otherwise sentence you to three years of imprisonment, but let's see how you do on probation. I'll suspend that sentence and let's see what happens. If you violate, you get that three years. Now, since the Sentencing Reform Act, probation is the sentencing itself. So it's a final determination by the district court that the appropriate sentence for the offense of conviction based on all the, based on the guideline range, based on the 3553 factors, the appropriate punishment for the offense of conviction is not imprisonment, but supervision, which the Supreme Court in Gaul has recognized is a substantial restriction on liberty. And is the supervised release term going to be pegged based upon the original offense? Is that what you're saying? Yes. And so it's not, it itself is not necessarily a function of, well, is it a function of the breach of trust? Or, I mean, if you say you commit X crime, I mean, some of those drug offenses, obviously supervised release can be for life. And so if you were in a situation where you got probation and you violated probation, the supervised release term is going to be pegged back to what your crime was that you got probation for, right? That's right. Okay. Right. And that's, the sentencing guidelines recommending a term of imprisonment based on the violation, the, you know, the criminal history and the seriousness of the violation, plus continued supervision is consistent with the idea that probation, the punishment that fits the crime for the original offense is supervision. In the Heartland case, that's still the appropriate thing to do is to punish them for the breach of trust and continue them on supervision. But that never happened here. There wasn't a 5P1.1 variance down to 0.6. Everybody just skipped that step, right? At the original sentencing? Yes. That was, right. So probation is what both parties agreed on and probation agreed on. You have to be in zone A or zone B. And nobody ever said zone A or zone B. The court just said, you look like you might be a good, a trustworthy person to give probation to. But many talk about zone A or zone B, right? I believe that's correct. Okay. Let me follow up with, just to make sure I understand where you are on the sentencing guideline range. You're saying a sentence of three months would be presumptively reasonable. It's just like any other guideline range. Under Chapter 7, yes. Well, under Chapter 7, isn't that the total sentence in your view? Yes. Okay. And a 10-month sentence would be not presumptively reasonable. Correct. And this notion that you can vary up depending on 3553A factors, question one, where does Chapter 7 ever tie to 3553A factors? Resentencings do, but they're rinse and repeat. In other words, they don't collapse. The resentencing doesn't collapse with the probation violation. They're two separate things. Say that it happened this way. Moonseals gets probation despite the district court's reluctance. And a week later, eight days later, he violates. Here comes the petition to the district court. The district court says, well, you better get him in here. We don't want him just sitting, filing away in pretrial detention. Comes in, says, did you do it? He says, yes, I did. Court says, okay, I'm not going to extend your probation. I'm going to revoke you right now. And let's hear from counsel. And counsel says, it's three to nine months. Government says four in this case, and you say three. And the court says, okay, three months. You're getting three months today. And I know that this is going to be a complicated resentencing because I've already seen the PSR and there's going to be psychological testimony and everything else. We're going to have to assemble some witnesses. I'll set the sentencing from a month from now. And when the court does that a month from then, it goes through chapter five. Two stacks. Would the district court have erred? Would we have, would you have asked us to reverse the district court? Is that aligned here and conducting it that way? Yes, 100%. There is only one resentencing. 3565A says that when they revoke, if you revoke defendant's probation, you resentence them. And this all depends on your view of OR? Yes, because OR is almost always used in the disjunctive. Well, what if OR in this case is like a railway operator? It's just a switch. You pull the switch for Santa Fe or Bozeman, or you pull the switch for chapter five or chapter seven. And it's the same thing as supervised release. It just comes in different orders, right? Supervised release, you get a term of imprisonment and then you get your supervised release. In this case, you get your probation term and then you get your chapter five. How is that not consistent? Because there's no statutory basis for going, for taking the multiple lasts around 3553A. If you're right on OR. Correct. But there are reasons to think you're not right on OR, right? No. You can't blame me for asking, right? What I'm referring to is, take this for an example. First of all, you've got your 994, 28 United States Code, which talks about both chapter five and chapter seven. Doesn't say anything about, if you're chapter seven, then disregard chapter five. They stand alone by each other. This one, and then I'll be quiet because I've talked too much already. We look at 3553 and we say, here comes this new B, which the court or which the legislative history says is to make sure that they can have some supervisor or some probation time left. And so, here comes OR B. And I guess to Mr. Rogers' language, won't you be my neighbor? It says to 35A6, disparity, won't you be my neighbor? And A6 says, sure, you can be my neighbor, but we've got some home board rules here, HOA rules in our neighborhood that say no disparity. And what you're describing here is gross disparity, isn't it? One court can choose not even to look at the PSR or chapter five. I don't know how you have a re-stem saying don't look at PSR, but you're saying you don't have to look at chapter five. Another court can look at chapter five and say, I'm not the freebie department here. You've committed a serious crime and I'm not going to give you three months. I'm going to give you at least 36 if it's just the low end of each. And suddenly, you have two courts that are far apart created by your view of war. Do you acknowledge that there is a disparity problem? There would be a disparity problem in that two similarly situated defendants received different sentences. And disparity is just, is one consideration in the 3553A and the most important consideration in avoiding unwarranted disparities is the guideline range. I also just disagree generally that there is a disparity when sentencing under chapter seven only because you're considering only defendants who were originally sentenced to probation. So whether they got, that was a result of a downward variance or whether it was a result of a downward departure or they were just originally sentenced to zero to six months, they're still not, they're receiving the same sentence as defendants similarly situated to them, which is those who were sentenced to probation and then were revoked. Counsel, can I pull on that thread a little bit? The briefs talk about one argument I think the amicus makes, and it's described, I'll describe it as a windfall argument, that defendants that they're sentenced under chapter seven will receive a windfall because they won't be subject to necessarily the chapter five guidelines. But it strikes me that, as I think you just said, most defendants who are sentenced to probation are already going to be near the top of the sentencing table anyway, in zone A or zone B. So do you have any sense or any argument as to how we should think about, if we're comparing chapter seven to chapter five for probation violators, how those may compare? Right. So presumably even now, post-Booker, most defendants who get probation are probably like I said at the top of the guideline range. At the time that chapter seven was implemented and at the time of the 1994 amendments to the statute, that was under the mandatory guideline regime when you could only get probation if you were zero to six or six to twelve. So the guideline ranges under chapter seven were far more punitive than the original guidelines range, and there was never the situation of whether somebody could be getting a windfall. And even now, the idea that the defendant gets a windfall, that's only, it typically comes up in cases like this, which are extreme outliers. You know, the Heartland case, which is what the Sentencing Commission is getting at, what they're writing, they're writing guidelines for Heartland cases, and Heartland probation cases, not here or in a couple others that amicus cites, where a defendant immediately or within a week commits a new crime. In that sense, it makes sense to give, you know, under those circumstances, it makes sense to give an upward variance, and an upward variance would be appropriate here. But when you have just a typical case where, for example, somebody's sentenced to three years of probation, they're on probation successfully for two years before, you know, maybe having a positive drug test, which requires revocation, the two-step process of sentencing them on the underlying offense to a term of imprisonment and then adding more for the chapter seven violation doesn't really make sense. And that's the situation that the Sentencing Commission was writing for. It's only these outliers where there appears to be this windfall, and even then, it's just there's a disparity between the guideline ranges. There's not a disparity between what the defendant actually got, which was probation, because that was the sentence that was determined to be appropriate at the time of sentencing, and then on revocation, the recommended sentence is always going to be higher. It's going to be imprisonment plus further supervision. Your argument presumes, does it not, that probation, that there was no variance. Take, for example, more one. The defendant got probation, and the district court said that, had given the defendant an option, and one of the options was to take a 51-month sentence. And, of course, the option given to the defendant, as I recall, was, or you can get probation, and if you violate probation, I'm going to give you 84 months. So in that case, the government's argument is right. It is a pretty huge windfall. You're arguing, well, it's not a windfall because I'm presuming that there's not a variance, that if somebody's given probation, it's not going to be like more one, but obviously there are huge downward variances where someone has a huge guideline range, like in more one, and was given probation. So it seems to me that the government is arguing basically speculation, and you're counter-arguing with speculation. Am I wrong about that? I mean, I admit there certainly are situations where the defense would be getting a windfall, where they got a massive downward variance the first time, and in more one, the district court was very expressly implementing the sort of old-school mentality of a suspended sentence by another name. It was, you know, I'm coming in here. I'm going to give you 48, but, you know, I'm going to go out on a limb and let you have probation, but I'm going to give you a huge sentence if you violate. That's much more along the lines of how probation used to be, the old-school philosophy of probation, and that's just not how it typically works now, and that's not how Chapter 7, that's not what the Sentencing Commission had in mind when they promulgated these rules. It was for the situation where supervision is the appropriate sentence, and then when there's a revocation, we'll punish for the supervised release, or I'm sorry, the probation violation, and then continue supervision. Certainly in circumstances like this, you know, Chapter 7 was always advisory. It still is. There's plenty of room for district courts to vary upwards. I see that I'm out of time. MR.  One more question.   All right. Thank you. Important point in this case. Really, I'm talking about the 0 to 6. You say that the court is locked into 0 to 6 as far as any upward variance. Is that right?   As far as an upward? MR.  Chapter 5 or the 3553A effect. MR. So under my position, under Moore's two-step process, is that a district court who initially gave a sentence of probation, that is the functional equivalent, if not a literal downward variance, to 0 to 6 months, and so when Moore says that at Step 1, you have to resentence without considering any post-sentencing conduct, then it's going to be incredibly difficult for a district court to justify anything outside of the 0 to 6 when they originally found that probation was the appropriate sentence. So that at least for purposes of third-prong analysis, there's a reasonable probability that the district court would give a 0 to 6 month at Step 1 and that he could receive a lower sentence. Thank you, Kevin. MR. Good afternoon. It may please the court. Ethan Sachs on behalf of the United States. Many of the points that I am here to make are very similar, if not exactly the same, as my friend has just spoken with all of you about. So instead of belaboring all of those points, I think I'd like to focus on a few narrow areas where we disagree. I mean, the first and most obvious, probably from the briefing, is that we think that this judgment should be affirmed. The second is, we didn't discuss much today, that our real issue with Moore 1 is that it not following the strict two-step process constitutes reversible plain error. We agree with the textual points that my friend has already raised, and I just want to emphasize that it's not just the word or in our view. It's the word or in combination with the fact that 3553A4B begins with a specific clause that says, in the case of a violation of probation, and then it goes on to say, effectively, consider Chapter 7's guidelines range. So we think the words or, together with that clause, are really doing most of the textual work. One quick point that I think is a potential disagreement also is that we think that the district court, in considering Chapter 5, which is permitted to do, and it did here, will often avoid any of these concerns about a potential windfall. And in fact, the district court is probably in the best position to understand, well, I just gave this defendant a break, and really that break should be considered in reimposing or resentencing this defendant. And I think the textual point I was just mentioning is actually perhaps clearest if we take an  example of a law firm's dress policy, dress code said. When an attorney comes into the office, he or she is to wear, in subsection A, business casual clothing, or in subsection B, in the case of a client meeting, wear a suit and  It would be pretty odd, we think, if an associate came in for a client meeting wearing business casual clothing. We think everyone would probably be disappointed in that. And that's because when or and a specific clause work together, it's pretty clear that the specific clause is directing you to do what is directly after that. I welcome the court's questions. I have a question about the disposition. It seems to me that the district court specifically said, I could use either range. And if the district court said, I can use either range, chapter five, the chapter five range, or the chapter seven range, what you just said would require us to reverse the district court, would it not? I take your honor's point. I think we read the whole context of the sentencing, or the resentencing hearing here, in which Mr. Moonseal first said, you should apply chapter seven's range. And some of the questions have gotten at this morning. We read the district court to have said, I acknowledge that range, but then quote, but I reject its application. And then because I've already given a break, such a substantial break to Mr. Moonseal. So we think, I agree with your honor, it does, the district court did use the words either. We think that's incorrect. We do think it's correct that it has to start with chapter seven. We frankly think it's close enough here to have started with chapter seven, rejected its application, and then considered the chapter five range, which is pretty close, we think, to what it should work, what the rule should be. And therefore, and it wasn't just that, but the court, I think, thoughtfully went through the 3553A factors and explained why a sentence of 36 months, or the range, 33 to 41 months, was more appropriate here in its view. And it went through the many chances that Mr. Moonseal has been given that his conduct, and I think this is an important point, you know, probation violations can range from really more minor technical mistakes, like perhaps not updating your time or travel to your PO office or something like that, or to a really serious crime. And here, of course, the probation violation itself was a very serious, dangerous, hateful crime. And so I think the district court really focused on that and also focused on Mr. Moonseal's lack of regret that he continued to blame victims for receiving these threats, that it was likely to reoccur because the probation violation happened, I believe it was eight days after the original sentencing, and that this was necessary because these threats were so dangerous to protect the public. Sounds like it. Do you, just following up on Judge Bacarach's question, it seems that you and the appellant agree that there was procedural error here. Is that correct? I would quibble with that slightly, respectfully, Your Honor. I'm not sure I would go so far to say, read in context, there was procedural error. I think if a district court had just walked in and said, without saying anything else, I could apply Chapter 5 or Chapter 7, that would probably be procedural error in our view. But I think what the district court here did first is effectively acknowledge that Chapter 7 is the starting point, specifically reject its application, and then move on to Chapter 5. But I do think there are situations in which strictly applying Chapter 5 would constitute procedural error. Okay. And just following up on that, let's assume we disagree and conclude that the district court did commit procedural error here. Your brief in advocating for an alternative ground affirmance uses the case law attendant to substantive reasonableness, which I thought was strange. And so I want to make sure I understand the government's position. If we conclude that the district court made a procedural sentencing error, we would not be able to affirm that on the alternative ground that we might think that that's substantively reasonable. Is that correct? That's correct, yes. Of course, as I mentioned before, we don't think there was procedural error, but we aren't fighting the point that if there is. Would there be any difference in judicial review of the district court's discretion under Chapter 7 versus judicial review of the district court's discretion under Chapter 5? No, Your Honor. I understand the order sort of asked a question that may have presumed that difference, and I understand where that may be coming from. The Chapter 7 sentences or case law pertaining to Chapter 7 sentences have used the phrase plainly unreasonable. But this court in Steele and Contreras-Martinez has made very clear, made explicit that following Booker, Chapter 7 plainly unreasonable and sort of your typical reasonableness standard are exactly the same. So we don't think there's any difference there or confusion caused by it. Can I ask you a question about what the record shows in this case? And this is sort of a paperwork question. We were talking about judgments earlier. So the district court sentences the defendant and they enter a judgment of conviction and the sentence is probation. When probation is revoked, that judgment doesn't go away. That judgment's still there. And once the defendant is re-sentenced under Chapter 7, then there is a judgment on revocation, a second judgment, right? I believe so, Your Honor. I was just listening to the discussion earlier. I was concerned that there might be something going on like the original judgment somehow is no longer there once there's a revocation. That's not my understanding. My understanding is consistent with yours. Okay. Contrast that with the situation in which the defendant violated supervised release. In that situation, what would the circumstance of the judgment look like? Let's say they were, you know, they did their time. They were on supervised release. They got a revocation of supervised release. What then is the situation? Is it just a revision of the initial judgment or is it a new judgment in the sense of two separate sentences? Frankly, Your Honor, I'm not sure. I think it's the former, but I apologize. I don't know for certain. Let me ask you the range. You're agreeing that the advisory range is three to nine months. Is that right? Yes. And the sentence here was 36. Yes. So four times the top end. That's correct. And you told Judge Tinkovich that it's the same standard of review with whether it's Chapter 7 or Chapter 5. Is that right? Yes. That's how we read this court's case law. All right. What about that? Four times the top end. That sounds like it's getting out there. I think under the specific circumstances of this case, it's really not. And I'm happy to go through. But, of course, you know, if a party feels like a sentence exceeds what should be given, of course, we think that's more of a substantive reasonableness challenge, which, of course, a defendant or the government, too, although perhaps more rarely, would challenge as substantively unreasonable. But I think the real reasons to justify that range, or the sentence, the resentence that the court gave here, are just how egregious this probation violation is, how dangerous the conduct threatened here. You know, this wasn't just some, I disagree with your views, frankly, threatening to kill, threatening to rape, threatening to torture. I should be careful. I don't think the probation violation included rape, but the original offenses did. And these are really serious threats that showed no signs of stopping, that there was extreme danger caused by this. I think all of your honors, unfortunately, are very aware of the, you know, circumstances today in which threats to officials like CIA officials here, he had also threatened Supreme Court justices, are really serious matters that can't be taken as light, you know, mistakes. And I think the district court was pretty thorough in also acknowledging that, yeah, you got a real break here on probation in the first place. And we don't think there's anything inappropriate with doing that at all. As I mentioned, I think that'll probably resolve most of the concerns about potential windfalls here. And in fact, we think, you know, the district court may have used a couple words that we would disagree with. The I, I could apply either range. But we think it really did a pretty appropriate job here of saying, here's the applicable range. I don't think it applies for these reasons. I just want to know when you sit down what your position is. Sure. And here's my question. Is, you say three to nine is the advisory range for chapter seven. Now, you could vary up under just chapter seven, right? Which is, this breach of trust is so extraordinarily bad, you get 15 months or something. That's, that's in the field of play. I think so, yes. Right? And then you have a different kind of variance up, which is 3553 factors, eight factors. You're saying that's another way that you can vary up under chapter seven. Is that right? Yes, I think, I think that's correct. And you have two judges, one of whom takes your view that this is really awful behavior and threatening and people had to get a security detail. The man was a danger. And then you have another judge who says, everybody knows that there are all kinds of screwballs out there who type letters and there was nothing really threatening about this guy at all. So, I'm just going to give a little teeny variance under 3553A. The other says, I'm going to give a big huge variance under 3553A. How can we meaningfully review the difference between those? Under what standard do we say, no, you went too far or you should have gone further? Respectfully, Your Honor, because, because I think that inquiry is really one of substantive reasonableness, I would propose that it's the same standard you apply now when you're reviewing sentences for, all types of sentences for substantive reasonableness. And I think- We're substituting our own view at that point. We have one judge that says, here's how much I think it matters under 3553A. We have another judge who says, I think it matters one whole lot more. And then you're saying, we're supposed to be able to say whether the variance was reasonable based on what? We have something with the guidelines. We don't have anything without that. Bob sort of stuff like that. Well, I think this is maybe where procedural reasonableness and substantive reasonableness blend together to some extent. And that is, I think it's incumbent upon the district court in imposing a sentence to fully explain its sentence. Now, I know this court has said it doesn't need to tick through all the 3553A factors verbatim. But I do think there is a requirement that a district court explain why it thinks a particular sentence is appropriate under the specific circumstances of the case. And I acknowledge that there will be cases in which different district court judges sentence defendants differently for what may be similar conduct. I think that's just a feature of our sentencing regime. I think also it's sort of one of the principles that sort of promotes that is what the Supreme Court talked about in Pepper, which is a relatively recent decision, or maybe now it's 15 years ago. In Williams versus New York, it's this long-held principle that district courts under the common law have wide discretion to consider lots of evidence about the defendant, him or herself, and not just the particular crime that the defendant is being sentenced for. And we think that principle comes into play here, that the district court may consider all of this information about a defendant. And in fact, Congress enacted a statute, Section 3661, which specifically says there is no on what the judge may consider regarding information of the defendant's background or conduct. The same principle that a district court judge taking its job seriously, we think, really will consider all of these circumstances, and that there's no need to impose a rule like Moore. Well, let me clarify as a structural matter. You talked about how procedural reasonableness can blend into substantive reasonableness. Are you saying that as it relates to purely procedural reasonableness, the rule that you are saying is the appropriate one is just one that encompasses in procedural regularity the ability to reference the Chapter 5 original sentence? It is not binding, nor is it one that is for which the sentence is rooted, but you're saying it would be procedurally regular for the court to then, after looking at Chapter 7, reference Chapter 5. Yeah, I don't see any irregularity with doing that. I would say, just to be clear on our position, it's not procedural error, and I think some of your questions earlier may have gotten to this, for a district court to apply solely Chapter 7's range in the replication. Well, but that goes then to the question of why one could be concerned about windfall, because, in fact, if it is not error for the district court to just apply Chapter 7, if a defendant got the benefit of some great act of largesse from the district court who felt inclined to be entirely, you know, take this case, for example, I mean, as you've alluded to, pretty horrific stuff, and the district court says, well, you know, I'm going to give you Well, if the district court then walks in and says, okay, well, you know, I'm a guidelines guy, and I'm just going to give you the 3 to 9, well, that could be pretty darn shocking, couldn't it? I think there would be cases where that's potential that happens. I'm not walling off those from ever happening, but I would really think, as a practical matter, especially if it's the same district court judge who sentenced this defendant to probation in the first place, and it really was such a huge break, I think it's very unlikely that that district court judge is going to just shut its eyes to the fact that it gave such a break to this defendant. And again, like happened here, I think the first thing, basically, the district court said was, well, I already gave you this huge break, right? And we don't think there's anything wrong. We think that's a natural thing for a district court to do. And I think it would be, I'm not going to say it would never happen that a judge in by the Chapter 7 range. But I think as a practical matter, it's very likely, especially when it's the same judge, that he or she is going to acknowledge the break that they just gave. Well, isn't that a huge problem in itself? I mean, the idea that I think you and the defense counsel have been advocating is that the sentencing is for the revocation of probation. As I understand the argument that you and the defense counsel are making is, it's not a do-over for the original sentence. It's not an opportunity to say, you know, I blew it. In fact, the district court says here that during the transcript says, well, I had reservations at the time that I gave probation. Well, this is a do-over of the original sentence, I think, is your whole point, right? I think that's right. Although I will acknowledge that the word resentence is typically used in at least some legal context, like habeas, to really refer to resentencing for the original offense. So I'm not sure it's necessarily wrong for a district court judge to be thinking of the resentencing to be for the original offense. And then I acknowledge that there's a little tension for them. Well, why does the statute seem to point the judge to the Chapter 7 policy statements as opposed to the Chapter 5 guidelines that apply to the original offense? My best answer is that's what Congress did in the statute, and we're just trying to faithfully follow its text. I do acknowledge that there is a little bit of tension there, though. Well, what do you think about the idea in terms of being congruent with the notion that it is a resentencing, that the same supervised release structure would apply as it relates to this revocation probation sentence? In other words, there would be a link with the original sentence, and therefore, the word resentence would have some import in that context. Yes, Your Honor. I would hesitate a little bit, though, just because, as Your Honor knows, that supervised release, when it's violated, it's not a resentencing. There's a separate statutory structure that deals with supervised release violations. So I'd be hesitant to overread the overlap between the two. But I will say that— I guess, and to make sure I'm clear, I thought what I heard the opposing counsel say is that when that probation revocation takes place, when one is saying, okay, well, what supervisory release term is applicable here? It would be the term that existed for the original conviction that existed. Is that your understanding? That's consistent with my understanding, yes. Okay. And I want to make sure that I understood your answer to Judge Phillips earlier, where it seemed to posit that there were two variances. There's only one variance under 3553A. In other words, when there's a revocation sentence, you are resorting to 3553A in determining how much to vary, right? Yes, absolutely. And it is not under Chapter 7. It is by virtue of 3553A, right? Yes, and to the extent I suggested otherwise, all I meant to suggest is that district court judges may use slightly different language. And to that extent, the variances could be understood slightly differently. But as Your Honor says, they're really the same type of variance in our view. Having to apply some of the 3553 factors in A6 is really the one that I want to ask you about. It doesn't seem to fit for revocation of probation. Similar records have been found guilty of similar conduct. Right. So that's relating to the original offense, right? That's right. How could it be? So this is really what I wanted to see clarification in your answer to Judge Phillips. So how can a district court use 3553A6 to vary from the Chapter 7 guideline range based on a factor that has nothing to do with revocation of probation? It has to do with something extraneous. Sure. I think, frankly, 3553A6 is going to be the most difficult area here. Our view of where some of the other variances may be motivated by, though, are some of the other 3553A factors. I mean, the defendant's history, his conduct, characteristics. I don't need to read through all of them for Your Honor. But those will sort of serve as the motivating grounds that a district court will impose a higher sentence because of. Frankly, we think something pretty close to that happened here. The district court, I think, was pretty careful to go through the different 3553A factors. Well, so if you don't mind if I follow up. So what Judge Phillips is asking you about the quandary for a future panel to assess substantive reasonableness for an upward variance from a 3 to 9 guideline range to 36 months. And the answer, I think, is essentially, well, that's what you all have to do now. That's not entirely true, is it? Because the 3553A factors are typically used for a variance that measures the same thing, the egregiousness of the conduct that gave rise to the sentence. Now we're talking about a misfit. We're talking about varying a 3 to 9 guideline range that Judge Phillips posited based on a factor that really has nothing to do with that. It's totally extraneous. And so back to Judge Phillips' question, for a future panel, how would a panel assess substantive reasonableness based on a huge upward variance that has nothing to do with the Chapter 7 guideline range? So I take your honest point that there may be some difficulty at times comparing sentences, the 3 to 9 month range versus the original range. The best answer I can give you is that probably is why the guidelines recommend probation only where the guidelines range is so short in the beginning. And I think this case shows why, and we acknowledge the government agreed with the probation recommendation here, so I'm not faulting anyone in specific. But it shows why it may not be a good idea when the guidelines range is so substantial to effectively give probation as why that doesn't fit. Now, of course, the guidelines in their commentary, too, are just advisory. So it's statutorily permissible or available for a district court to give probation, whatever the guidelines range is. But we think it's more advisable, if you will, to give it when it's only in Zone A or B, as the guidelines seem to suggest. Well, I'm struggling with that, with your line of answers with Judge Bacharach. Why is there a mismatch? I mean, if you're looking at 3553A, A6, disparity. Well, I can find somebody who had a revoked probation, who had similar or not similar conditions as this person. Why couldn't I do an A6 analysis? Why couldn't I do an A1? I guess that's the nature and circumstances of the offense. Why couldn't I do that? I would go back, because under your scheme, you can look to Chapter 5. You don't have to, but you can look to Chapter 5 in determining whether to vary. So I don't understand why 3553A is a mismatch. That's a fair point, Your Honor. I think I was just acknowledging that the 3553A factors, some of them use the word offense, and I think it's 6 that talks about a guilt, a finding of guilt, which is, I think, suggesting that it's referring to the underlying offense. So to the extent that someone commits a really minor probation violation and is then being resentenced for the original offense and gets, let's say, a three-month sentence under Chapter 7, I could understand there being some disconnect between that and a case where the advisory guidelines written under Chapter 5 is like 95 months or something. There may be occasional extreme cases where that happens, but I think Your Honor's point is well taken that, and I should have mentioned this, that I don't think that's going to happen very often. But aren't you looking at the offense? You said uses the term offense. This person received probation. That was the sentence for this offense. Yes. Okay. They violate probation, and you're saying, okay, here's the guideline, the policy statement requirement, well, not requirement, policy statement prescription for that violation. Now, I want to look at the subchapter A. I want to look at 3553A, and part of that is looking at what was the offense that led me to give him probation to begin with. So you are looking at convictions. You are looking at disparity of offenders, are you not? I think in the typical case, yes, and I think the district court should do that. I suppose my answer was too limited, and I was supposing it's the instance in which the district court judge on ring sentence says, I'm sort of blinding myself to everything but the Chapter 7 range here. But I think in the sort of fuller context and the way we think a judge probably should go about it is to consider all of the 3553A factors holistically, which will point them back to the underlying offense conduct, and therefore, I think, get rid of much of the What constrains the sentencing range on probation revocation? So there's case law for basically every circuit that says the sentence can be given up to the statutory maximum for the underlying offense. That language, I don't think we see in any statute, but it is in the guidelines commentary. We don't, we're not here to fight that rule. It is true we agree that the guidelines are only advisory, but I think all circuits have currently binding law that says the court can sentence up to the statutory maximum for the original offense. And is the language that you're thinking about in the background of Chapter 7, is it you can revoke and impose any other sentence that initially could have been imposed? Yes. That your understanding is that that refers to the statutory maximum? Yes. So Chapter 5 could certainly figure as an analog, but really the constraint is the stat max. Yes. If your honors have no further questions, we'd ask that. I'll ask you about zero to six months if you have extra time. Do you agree that the zero to six is binding? No, your honor. We think that... All right, well, let me interrupt you to make sure I get what I'm looking for. And that is, I know how you get to zero to six. You either start there or you vary down under 5B1.1. That's how you get there. Yes, although I think it's not necessarily wrong for a district court to say the guidelines range here is something that falls outside of Zone A or B. And yet I'm still giving a probationary sentence. The ticket to the ball is 5B1.1, which says you have to be in Zone A or Zone B if you're going to get probation. Absolutely, your honor. I'm just trying to point out that those are advisory and not binding, of course. No, no, no, that's not true. Advisory is the guideline range. That's ultimately calculated. But in calculating the guideline range, that is a requirement. The court can't say, well, I think I won't choose to follow 5B1.1 today. Absolutely, you can't say I'm not going to follow 5B1.1. But I don't think we agree that 5B1.1's language saying that a probationary sentence is available only for a sentence whose guideline range falls within Zone A or B. We don't think the court is bound by that because it's just a guideline. I don't understand your argument then. You just said two different things. And take it just for purposes of the question. 5B1.1, which says you have to be in Zone A or Zone B to get probation, and here the court didn't ever examine that. It just said I'm giving you probation. But if the court had buried down to say zero to six months, and that's why I'm giving you probation, I just buried down, look at your PSRR, I've heard from various people, I think you're a zero to six man. Then there's an elevator down, but I don't think there's an elevator up. Once the court says zero to six, that's what the court thought the value of the crime was. And so I don't see how you ever get back up off the basement floor once you go to zero to six. Please explain your view. I see my time has run out. But if I could answer, I think our view is that respectfully we disagree and that a district court does not have to be within Zone A or B to be able to give a sentence of probation. We think that is advisory purely, and perhaps for good reason it's advisory, but we think a court could be within Zone C or D and give a sentence of probation, I think like occurred here, and then upon resentencing could consider that Zone C or D range as the Chapter 5 range for this defendant. If there are no further questions, we'd ask that you overrule more one, but affirm the judgment. Thank you, Counselor. Before the time starts, I, Mr. Yager, on behalf of the court, I want to thank you for agreeing to take this representation. You're doing a service for us, and we appreciate it. Well, thank you, Your Honor, and I was joking with some of my colleagues that I got the job that nobody seemed to want. But it is an honor, and I appreciate the opportunity. In my view, more one does not truly create a new rule. It formalizes what many conscientious courts across the country have effectively already been doing. And I think you can see that in the fact that both parties functionally agree that upon revocation, the Chapter 5 guidelines range is at least something that this court may consider. And the government goes so far as to say that when attempting to solve the problem of the massive sentencing disparities, it's something the court should consider. In fact, that's why below, the government didn't just ask the sentencing court to consider Chapter 5, but, in fact, a sentence precisely within the Chapter 5 range, and went so far as to say that sentencing based on the Chapter 7 policy statements would be, quote, unquote, absurd. So I think the only real question in the case, based on the functional fact that courts are going to have to look at Chapter 5 at some point in the sentencing process, is whether they have to explain that, in fact, they have done so, how that consideration has impacted their final sentence, and how the Chapter 7 policy statement fits in. More One just requires that they do exactly that on the record, consistent with the show your work principle. And if they don't do that, I think you run into the problems that Judge Phillips was mentioning, and which More One mentions, which is the difficulty of reviewing sentences when courts don't know if a sentence represents a variance upward from Chapter 7, or a variance from Chapter 5, or some combination of the two. More One just makes sure that all the procedural boxes have been checked, that everyone can understand where the sentence came from, and that appellate courts can review that sentence in a functional way. Well, why can't they understand where the sentence came from if, as is often the case, the court will explain where it came from? If you start with, and you view Chapter 7 as being the required starting place for determining a sentence, and then the court goes through an explanation of why the sentence of Chapter 7 is not sufficient. I mean, what's unintelligible about that? We do that every day. Sure. And, Your Honor, the problem is, if a court rejects Chapter 7 under the law as articulated by the government and the defendant, there's no requirement to look at Chapter 5 and explain where the numbers came from. So you could have a court impose here 36 months of incarceration without explaining where that number came from. We know where it came from here, because it came from the original guidelines range. But without the requirement to say that on the record and explicitly explain how the court arrived at that sentence and why it believes that sentence is appropriate, you don't have the procedural backstop of More One. Well, quite apart from the procedural backstop of More One, our case law, at least as I understand it, and you can correct me if I'm wrong, is that essentially when you're talking about these policy statements post-Booker and in this advisory world, you treat them just like you do guidelines in the sense that if you're not going to do what they say, you have to explain why you're not going to do what they say. You don't have to do what they say, but if you don't do what they say, you need to explain that. Why is that any different? I mean, so if you get somebody who gives a 36-month sentence, they are actually in error if they don't articulate the basis for doing that, right? I agree with you, Your Honor, but what is your baseline under the government and the defendant's analysis? The defendant has admitted now during argument that after revocation, the probation sentence goes away and there is functionally no sentence for the underlying crime. If you go to Chapter 7, what you'll see and what the statutory language makes clear is that Chapter 7 punishes the violation. It doesn't punish or even really consider the underlying crime. It makes very clear, quote, the policy statements in Chapter 7 prescribe penalties only for violation of the judicial order imposing probation, not the underlying crime. I think the opposing counsel would say, and it seems to me to be the understanding, that he was sentenced for the underlying crime. His sentence for the underlying crime was probation. And so that was a sentence that he served, albeit for a very short period of time, and then he was revoked. And so we're now in the world of what happens in a revocation for probation. Chapter 7 tells us what to do in that situation. So the underlying crime was dealt with when the court made the decision to give him probation. But the probation is gone. It's been revoked. That's right. It's not there anymore. And so the court has to decide what is the appropriate way to calibrate a sentence for this defendant who no longer is being punished for the underlying crime, has breached the conditions of probation, now has to be punished for that breach of trust. We have to figure out what to do with the underlying crime. And I want to tie this back to the statutory language because I think that's arguments about the specific versus general canon and the disjunctive or. But I think it's important to actually look at what 355384 actually says. It says there are two guidelines ranges that you can consider. One is for the applicable category of offense. An offense is the underlying crime. Or in the case of a violation of probation. But it doesn't say, and that's the Chapter 7. But it doesn't say if in the case of resentencing after revocation, consider only Chapter 7. It says in the case of a violation of probation, consider Chapter 7. Well, that's. And that marries very closely with what Chapter 7 says, which is, you know, as plain as day, we are punishing only the violation of probation. We are not considering the underlying offense. Your Honor. The problem with that, though, is when you revoke probation, there's one choice. Time plus supervised release. You can't revoke and continue on another term of probation, right? Correct. So it tells you what to do when the probation sentence is gone. It's not really gone. It just tells you what you have to do with it. Well, if that's the case, Your Honor, I don't understand what it means to resentence. Because if all you're doing is punishing the violation of the condition of probation, that's not resentencing on the underlying crime. You're not revisiting that offense, figuring out what would be appropriate as a punishment for that offense. You're looking at a Chapter 7 grid that considers two things, the criminal background of the defendant and the nature of the probation violation. Well, fair enough, but you're having to impose another sentence. Correct. So it goes back and it's telling you to impose another sentence and it's telling you how to do it. It's telling you to do it within the confines of the probation scheme, not kicking you back, necessarily, to the Chapter 5 scheme. Well, I disagree that that's the way that the statute needs to be read. I understand your point, Your Honor. But then the problem arises that you get these just massive disparities. Well, the disparity was considered in the beginning. Presumably, in this case, Judge Sweeney created a great disparity by giving someone charged with this crime a probation sentence. I mean, that's a huge disparity compared to other people convicted of the same crime. A disparity is okay to have if you have a good reason for having the disparity. So we're going to have disparities. You just have to explain why it's there. I don't disagree with you, Your Honor, but this isn't a terribly unique case. In Michael and the Eighth Circuit, it was literally a 30 times difference between the Chapter 7 and what was imposed. In other cases we've seen in the Second Circuit and First Circuit, there are many, many times difference between what Chapter 7 would provide and what Chapter 5 would provide. So if you're not explicitly considering Chapter 5, and that's not a requirement after revocation, I think you're going to create massive disparities that aren't necessarily explained without reference to Chapter 5, which is what more one requires. And that's the difference between the two. Both the government and the defendant say, no, just start with Chapter 7 and vary upward. I guess what they're saying is feel free to vary upward literally by 30x or 10x or 5x. Well, I mean, why couldn't you? I mean, if you have a heinous crime by somebody who seems to maybe have some mental problems or they're a kid and it was a one-off, in your opinion, and you want to cut them an extremely large break, but their crime was really bad, and you come back to it and you say, wow, I made a real mistake because you only waited two weeks before you committed a bank robbery. And, I mean, I've got to consider on resentencing the seriousness of the original offense, right? I've got to give a sentence that's going to promote respect for the law, that's going to provide adequate deterrence. And I did these. I tried to give you a break, and you proved to me that a break won't do it. So now I've got to lower the boom on you. I mean, you could get up to these 30x sentence, I would guess. I think you could, Your Honor. I think the safest way and the most sensible way to do that is by ensuring procedural reasonableness by considering Chapter 5. And whether you do that through the OR provision or you look at 35536, which the government effectively concedes you have to do to ensure there's not some massive disparity, the fact of the matter is you have to consider Chapter 5. You have to deal with that in the sentencing, and you have to say it explicitly on the record, which is what more one requires. If you don't do that, I think you're hard-pressed to explain the massive disparity, and that's why Judge Sweeney here I think sensibly said, I'm choosing the Chapter 5 range. That's why the government sensibly said, I basically want you to ignore Chapter 7. I want you to use Chapter 5. They're saying that somehow discretionary and courts don't have to do it. I don't know how she would have done it or assured herself that this was a sensible sentence in the circumstances without starting with Chapter 5. Why couldn't she have started with Chapter 7 and done what we see probably every court term, and that is a variance where the district court says that the guideline range isn't appropriate in this particular situation. It doesn't fit the magnitude of the penalty that the defendant should be subject to. I don't know that the steps are necessarily sequential in one way or the other. I don't think it would be error under More 1 to start with Chapter 7 and move to Chapter 5 as long as both are considered appropriately, so I don't know that that would be a problem. But More 1 envisions that you're sentenced for both, right? In other words, you're sentenced for the original offense, and as we've been talking about, the whole idea of probation was that was the sentence for the original offense. And so now, in the More 1 fiction, that now, for the first time, you're sentenced for both. You're sentenced for the original offense and you're sentenced for the revocation of probation, and if you can do all that, the one thing I don't understand is how you can square that with 7B1.3 in a couple of respects that the Federal Public Defender notes, and that is that when you revoke probation in your sentence under Chapter 7, you have to, or at least the recommendation is, is that you, as part of the revocation, are going to have to serve the custodial part of the sentence, for example, intermittent confinement, weekend in jail. You're recommended to do that as part of the revocation of probation, but you're saying, and More 1 says, that, well, you do that, plus you get to do it over again. Counsel on that? But it does say, I mean, and I think this is a very critical piece of More, if you're going to affirm it. Obviously, a district court could choose to impose as part of its sentence for the originally charged crime or the probation violation a term of zero months imprisonment. So More 1 does build in the flexibility to address the sort of problems you would create by sort of a double punishment that's too high. After the court does the analysis, looks at Step 1, looks at Step 2, looks at Chapter 5, looks at Chapter 7, all the 355A factors, and then determines what it believes is a fair sentence. On this point about probation sentences and are they served and so forth, this is new to me, and I want to run a couple of things by you and get your thoughts on them, which is Section 3564E says, a sentence of probation remains conditioned and subject to revocation until its expiration or termination. The guidelines, Chapter 7 in the probation background section says, under current law, one of the things the court can do is revoke probation and impose any other sentence that initially could have been imposed, which may be the previous version of 3565. But I don't know why that would change with the new one. And I don't think it does. In other words, my understanding is that if someone gets their probation revoked, it's a free game on what's going to happen. You don't get a benefit from getting your probation revoked and now the sentence is zero because you violated your probation. You're right back in front of the court and subject to getting sentenced for whatever crime you committed, is my understanding. I think that's correct. And I think that's why my friend for the government said every single circuit in the country acknowledges that it's fair game. The only real constraint, the only hard constraint, is the statutory maximum after revocation. So I think that's true. And that's the problem and the tension here. Chapter 7 just isn't calibrated toward the underlying offense. It is calibrated for the probation violation. And it's a big range, to be sure. But what it does not do, and that's why we see such a difference here, it doesn't take into account the crime of conviction. It takes into account the conduct that led to the revocation. In fact, I think what's relevant, too, here is in the introductory portions of Chapter 7, it makes very clear the guidelines aren't even recommending a punishment that would fit the defendant if the defendant were convicted of a crime for the conduct that led to the probation revocation. That's separate. In fact, it's consecutive. So what Chapter 7 is envisioning is a punishment for the breach of trust only. Other criminal sanctions, including for the underlying offense, but also for any criminal conduct that led to the revocation in the first place, are separately sentenced under either state law, if it's a state law offense, or the federal guidelines if it's a separate conviction, and they're served consecutively. So I don't think that the government's or the defendant's position really adequately addresses what the point of Chapter 7 is, how it's written, and how it functions. Well, why isn't that entirely logical, if it is said that your probation sentence is that? The court has chosen to sentence you for the underlying offense of probation. So that's done. You chose to violate it, but it's done. And at that point, the only thing on the table is, what happens for your breach of trust? And what happens for the time imprisonment that you're going to have after that? Why isn't that entirely logical, if you accept the premise that probation is not some add-on? It is your sentence for the underlying offense. I don't think, if that's the way you look at it, Your Honor, that whatever punishment you impose under Chapter 7 is truly a resentencing. And that's what 3565A2 requires, not just punishment for the breach of trust, but resentencing the defendant under Subchapter A. Subchapter A is largely, if not entirely, about sentencing for adjudicated crimes. Every factor in 355A is calibrated toward an adjudicated crime. A probation violation is not an adjudicated crime. It's something that a court finds based on the preponderance of the evidence after probation issues and warrants, as there's been a violation. Well, there's been an adjudicated crime. The person just got probation. And when you're referencing back to 3553A, why aren't you looking at... I mean, you're supposed to sentence under Subchapter A. Subchapter A includes 3553A factors. So you are directed statutorily to look back at those factors. And what do those factors tell you as it relates to what the underlying conviction is? And say, well, you know, if I'm going to give them three... Should I really give them three to nine months under Chapter 7 when I look at what the actual circumstances of the offense are? And so why isn't that... Why, I guess, to phrase it this way, why do not the 3553A factors speak to the sentencing that is now taking place when you statutorily have to look at them anyway? I don't think they don't look at those issues, Your Honor. It's just that if you're going to be looking at the 3553A factors, you're going to have to look at the underlying crime. Chapter 7 doesn't do that. How do you look at the underlying crime? You look at Chapter 5 and the range that's there so that you can assure yourself you're taking into account the appropriate circumstances, that you're not creating unwarranted disparities, and that's something the government functionally agrees with. If you're only looking at Chapter 7, that's the only requirement, and everything else is discretionary, and you can functionally ignore Chapter 5, how do you assure yourself that the sentence that you're imposing doesn't create disparities and adequately takes account of the underlying circumstances and everything else that the guidelines deal with? And I just... Moore 1 is not unique in this regard. The Second Circuit in Coquillade said you re-sentence, quote, on the underlying crime of conviction, authorizing any term up to the statutory maximum. So there's got to be a re-sentencing on the underlying crime, not just the breach of trust. Counsel, could you focus on what the textual basis would be for your position that courts have to look at Chapter 5? Yeah, and so it's two things, Your Honor. First, in 3565A2, the court is authorized to revoke the sentence of probation and re-sentence the defendant under Subchapter A. Moore 1 and the other courts that I mentioned interpret that, and I think correctly so, as revisiting the crime of conviction and using the guidelines that apply to that crime. So it's really the plain meaning of the term re-sentence. And then second, under 3553A4A, this is the or provision. I agree or is disjunctive. The question is, what is it doing there? What it's telling you is that you have to consider the guidelines range for the, quote, applicable category of offense, the adjudicated crime. Here was the original crime on which Mr. Moon Seals was sentenced to probation. Or in the case of a violation of probation, this is A4AB. It doesn't say in the case of re-sentencing after revocation. It says in the case of, quote, a violation of probation, consider Chapter 7. And then if you go to Chapter 7, what do you find? You find a sentencing grid and commentary and other information that's calibrated not to the underlying crime, but to the breach of trust. Well, Chuck, the guideline or the sentencing region, Chapter 7, uses the criminal history from the original offense, doesn't it? It does. So there is still some tether. But it doesn't consider the crime of conviction. But I guess just to follow up, I appreciate your points about where in the statute, and this is what More 1 pointed to. Yes. But is it fair to say that we don't see reference specifically to Chapter 5 anywhere within Chapter 7 or within the statute that directs us to Chapter 7? We can adopt the reading that More 1 did in the way that you've charted out, but specific reference to Chapter 5 is not found. Is that fair to say? I mean, I don't want to concede that because I think if you read the OR provision the way that I do and probably the way that More does, that is your explicit direction to go to Chapter 5. But certainly, the statute isn't written as clearly as it could have been on that front. And I think that's why you see some courts sort of taking different paths. The Ninth Circuit does require consultation of Chapter 5. It just gets there through 3553B. And I think in that case, Ollivandji, the court said, no, I'm actually going to remand for consideration of Chapter 5 because you have to do it if you reject Chapter 7. So there's a similar More rule in the Ninth Circuit. It just gets there through a different statutory provision. One reason that you wouldn't see any reference in Chapter 7 to Chapter 5 is Chapter 7 is a standalone. It's talking about the probation violation of crimes. Am I right? And that's my point. Under 3553A4B, in the case of a violation of probation, go to Chapter 7. Violation of probation not in the case of re-sentencing after revocation, which would imply now that we've revoked, we have to re-sentence the defendant. The Congress could have said in the case of re-sentencing after revocation, look only at Chapter 7. It said, in the case of a violation of probation, look at Chapter 7 because that's what Chapter 7 does. It looks at the breach of trust only. Counselor, can I ask you about, I'm over here on the left, way over here on the left. Your read of the statute a moment ago, in response to Judge Roskin's question, you said how the 7B1.4 sentencing table somewhat is untethered from Chapter 5. And I think I can glean from that, part of the reason you take that position is because earlier in your presentation, you said this case is not an outlier. But I guess I want to challenge that assumption a little bit because I think the Heartland cases for probation are those that, when they originally are sentenced, fall under Zone A and Zone B. And if you look at the sentencing table at Zone B, the worst offender of criminal history Category 6 at Zone B is a 9 to 15 range. And you compare that same offender who comes up then now as a probation revocation for the lowest grade, a grade C, and it's 8 to 14. These seem really compatible for what I think are the Heartland cases of probation violations. So why is that the wrong way to look at this? Your Honor, I think it's the wrong way to look at it for the statutory reasons I gave you. But also because if you do the more one analysis and you look at Chapter 5 and Chapter 7 and then you march through the factors required under 3553A, you are going to see very quickly, I'm not going to be opposing 120 months. And it's why most courts don't do that. Typically what they do is they consider Chapter 7, they consider Chapter 5, and then they end up at or maybe even below the Chapter 5 range. Michael was a good example of that in the Eighth Circuit. I think that's probably the best example of it. Because the court said, please go look at Chapter 7. The court did so. It came back and it gave a sentence that was one month under the Chapter 5 range. It stuck to it from the original case. So I think the virtue of more isn't sort of creating additive sentences. It's just telling courts, please look at both. Explain it. Do the disparity analysis so that we can review it. Otherwise, we're just dealing with these massive disparities between Chapter 5 and Chapter 7. We really just don't know where to anchor ourselves. But does War State just look at both? It says re-sentence, but you can re-sentence for zero. And I think that's a very critical portion of more. And that's note 10 of more. I think that's one of the reasons the court put that footnote in. Because it recognized there are going to be cases where you're going to need zero. Because after you do the 3553A analysis, you see sort of where other defendants have been sentenced and you're going to land somewhere close to those other defendants. But in effect, you are doing two sentencing judgments. Why would the scheme require us to go through a mechanistic process, even if one of those sentences is zero, of doing two sentencing judgments? I mean, I don't think anybody's disputing that there's some virtue in looking at Chapter 5. But that's not what More 1 is saying. And that's not what you're saying. Why do you have to do that? And I don't think, Your Honor, it's two judgments. It's a single sentence. But it's considering both aspects of the conduct and the underlying crime to arrive at a single sentence. But you're actually moving beyond the question of whether you're going to have a piece of paper or two pieces of paper. You're actually making a sentencing pronouncement as to the underlying offense. And then making a sentencing pronouncement as to the probation violation. And then coming up with an amalgam of the two, right? Well, yes, you are. And that's what More 2 did. In fact, the court in More 2 varied downwards from where it was before remand. And it said, OK, I'm going to do the More analysis. I'm going to go step 1, step 2. The court actually lowered the ultimate sentence that the court imposed based on that step 1, step 2 analysis. But again, Your Honor, that's the way that you can explain to the reviewing court, to the defendant, and the public, I'm giving you a sentence here that is literally 10 times higher than the range that you would have under Chapter 7. Here's why, because I looked at Chapter 5. If I didn't look at Chapter 5, this would be completely uncalibrated to other similarly situated defendants. What has always puzzled me about that argument of show your work is, if I walked in as a district court judge, and your sentencing range under Chapter 7 was 3 to 9, and I gave you 130 months, and I didn't say a word. I said, that's what I'm giving you. I'm walking out. Don't you think that that sentence could be challenged both procedurally and both substantively? And you'd have a hard time maintaining it, wouldn't you? I don't disagree. But I think, what would the court do to explain itself? The court would say, I looked at Chapter 5. As it often does, it would say, I looked at Chapter 5. I looked at the 3553A factors. And this is why I'm giving you the sentence. Exactly. And our position is, that's the virtue of Moore. The virtue and required are two different things, aren't they? Well, I think you can have the correct rule, and it can be virtuous. Yes, you can. Mr. Yarger? Yes, Your Honor. Yeah, I appreciate you taking the representation of the district court in this case also. If we disagree with you on the Moore two-step process, can we still affirm the sentence? I think you can, under the government's approach. What I think would be a mistake is some sort of an opinion that says, you are anchored to or required to start with Chapter 7, which is really the defendant's position. I think that was the statement my friend made, that that's the anchor. That's not always going to make sense. And if you're not going to follow Moore, I think what you ought to do is say under 3553A6, you have to assure yourself that there won't be sentencing disparities, not based on the probation violation, but based on the underlying crime. The only way to do that and be procedurally reasonable is to look at the Chapter 5 range and at least consider it, and then move on to sentence under, in your discretion, Chapter 7, Chapter 5, or under what other considerations you deem to be relevant. So I do think you can affirm, even if you overrule Moore 1. And I'm happy to answer further questions, but I appreciate the appointment, and I don't envy you writing this opinion. Thank you, counsel, all of you, for very fine arguments, and the envox court is in recess.